**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THE OHIO BELL TELEPHONE COMPANY, | : | |
| | : | |
| | : | |
| Plaintiff, | : | **Case No. 2:09-CV-00918** |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| PUBLIC UTILITIES COMMISSION OF OHIO, et al., | : | **Magistrate Judge Mark R. Abel** |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court for merits review of the claims brought by the Plaintiff Ohio Bell Telephone Company, AT&T Ohio ("AT&T"). In its Initial Brief on the Merits, AT&T challenges the final determinations of Defendant Public Utilities Commission of Ohio ("PUCO") on the arbitration petition brought by Defendant Intrado Communications, Inc. ("Intrado"). AT&T alleges that the requirements in the "interconnection agreement" between AT&T and Intrado are contrary to the Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq.* ("the Act").

Count One of AT&T's Complaint contends that the Defendant Commissioners of PUCO[1] violated the Act by finding that Intrado's service qualified as a telecommunications carrier offering "telephone exchange service" under the Act. Counts Two and Three allege that PUCO lacked authority to order AT&T to establish a "point of interconnection" (or "POI") on Intrado's network as part of the interconnection agreement. Count Four seeks invalidation of certain terms ordered by PUCO in the arbitration award that are necessarily related to the point of

---

[1] Defendants Alan Schriber, Ronda Fergus, Valerie Lemmie, Paul Centolella, and Cheryl Roberto are sued in their official capacities as employees and commissioners of Defendant PUCO.

interconnection being established on Intrado's network.  Finally, AT&T's Counts Five and Six challenge the lawfulness of PUCO's orders requiring established frameworks for certain transfer arrangements with third party customers, and the rates to be charged to Intrado for any services or products AT&T provides that are not contained in the agreement.

For the reasons provided below, the Court finds that PUCO's decisions in its Arbitration Award were consistent with the Act, and were not arbitrary or capricious.

## II. BACKGROUND

### A.  FACTUAL BACKGROUND

Plaintiff AT&T is a provider of local telephone services in the state of Ohio and meets the definition of an "incumbent local exchange carrier" (or "ILEC") under the Act.  *See* 47 U.S.C. § 251(h); 47 C.F.R. § 51.5.  ILECs are the telephone companies which held monopolies in local telephone markets prior to the passing of the Act, which was enacted to encourage competition in those markets by imposing several duties on the incumbent carriers.  One part of AT&T's operations as an ILEC in Ohio is its 9-1-1 emergency telephone services.  Defendant Intrado is a 9-1-1 emergency service provider for end users of wireline and wireless carriers and voice over Internet protocol ("VoIP") providers.  Intrado seeks to compete with AT&T's incumbent 9-1-1 service.  Intrado offers a novel "Intelligent Emergency Network" ("IEN") 9-1-1 service that utilizes an "Internet protocol" technology based network as an alternative to the traditional, ILEC-maintained, wireline-based 9-1-1 systems.  Intrado's customers will not be 9-1-1 callers themselves, but rather those who answer 9-1-1 calls, referred to as Public Safety Answering Points ("PSAPs"), and other public safety entities, including municipal police and fire departments.  By providing this more specialized, limited 9-1-1 service, Intrado intends to increase efficiency and effectiveness in responding to emergency calls.

-2-

AT&T is a monopoly provider of 9-1-1 services in Ohio.  In order to provide its 9-1-1 service to Ohio customers, therefore, Intrado's network must be interconnected with AT&T's network.  Interconnection is defined as "the actual physical linking of two networks for the mutual exchange of traffic."  47 C.F.R. § 51.5.  The Act provides protections against ILEC monopoly of markets and requires ILECs to enter into interconnection agreements with competitors.  The typical interconnection agreement enables a so-called competing local exchange carrier ("CLEC") to offer local exchange and exchange access services and sets forth the terms and conditions by which the new competitor can use an ILEC's network and purchase the ILEC's telecommunication services for a negotiated fair price.  *See* 47 U.S.C. § 251(a)(1) & (c).  Competing carriers can compel an ILEC, such as AT&T, to negotiate an interconnection agreement when certain conditions are met.  State utility commissions review, arbitrate, and grant final approval to interconnection agreements.  *See* 47 U.S.C. § 252(e).

The Act establishes a procedure which first allows voluntary negotiations between the incumbent carrier and the new competitor.  In the event the parties fail to negotiate all the terms of the interconnection agreement, the Act authorizes state public utility commissions to adjudicate or arbitrate disputed issues.  In that case, either the new entrant or the incumbent carrier may file a petition for arbitration under 47 U.S.C. § 252(b)(1).  Here, because Intrado and AT&T were unable to negotiate certain interconnection terms on their own, Intrado petitioned to PUCO for arbitration under the Act.  AT&T opposed Intrado's petition, arguing that Intrado's service did not meet the requirements under state and federal law to compel interconnection through an arbitration proceeding before PUCO.  PUCO ordered interconnection between AT&T and Intrado, and prescribed specific terms which AT&T now contests as contrary to the Act.

Defendants insist that AT&T's challenges are baseless and merely constitute attempts to delay, if not deny, competition for emergency 9-1-1 service in its monopoly area.

## B.  PROCEDURAL BACKGROUND

Intrado filed its initial application for certification as a CLEC with PUCO on November 19, 2007.[2]  AT&T and other interested parties were granted interventions by PUCO to challenge Intrado's certification.  Prior to PUCO's ruling on Intrado's certification application, Intrado filed a second petition with PUCO on December 21, 2007, seeking arbitration in its interconnection with AT&T under Section 251 of the Act.[3]  On February 5, 2008, PUCO issued an order certifying Intrado as a "competitive emergency services telecommunications carrier" (or "CESTC," as opposed to a traditional CLEC) with the right to request interconnection with AT&T under PUCO's rules and the Act.[4]  *See In re Intrado Commc'ns, Inc.*, No. 07-1199-TP-ACE, 2008 WL 312963 (Ohio P.U.C. February 5, 2008) ("Certification Order").  AT&T and the other interveners applied for rehearing of Intrado's certification.[5]

In its April 2, 2008, entry on rehearing, PUCO fundamentally affirmed its prior certification of Intrado's service as a "telecommunications carrier" under both state law and federal law.  *See In re Intrado Commc'ns, Inc.*, No. 07-1199-TP-ACE, 2008 PUC LEXIS 201 at *31 (Ohio P.U.C. April 2, 2008) ("Certification Rehearing").  PUCO clarified, however, that its ruling did not apply to any other emergency telephone services, *id.* at *27, nor did PUCO decide any specifics regarding Intrado's still pending request for arbitration, *id*. at *28.  None of the intervening parties, including AT&T, appealed PUCO's final decision in the Certification

---

[2] Ohio P.U.C. Case No. 07-1199-TP-ACE.
[3] Ohio P.U.C. Case No. 07-1280-TP-ARB.
[4] On February 13, 2008, PUCO issued a supplemental finding and order ("Supplemental Order") clarifying certain terms and requirements for contracts between Intrado and individual Ohio counties.  *See In re Intrado Communications, Inc.*, No. 07-1199-TP-ACE, 2008 WL 449803 (Ohio P.U.C. February 13, 2008).
[5] On March 6, 2008, applications for rehearing of PUCO's February 5, 2008, Certification Order were filed by AT&T, Cincinnati Bell Telephone Company LLC ("Cincinnati Bell"), and the Ohio Telecom Association ("OTA").

Rehearing to the Supreme Court of Ohio, as provided as a matter of right under Ohio law.  *See* O.R.C. § 4903.13.

On March 4, 2009, PUCO issued an arbitration award on Intrado's petition for arbitration, ordering AT&T to provide interconnection to Intrado for all services offered by Intrado, subject to certain requirements.  *See In re Intrado Communications, Inc.*, No. 07-1280-TP-ARB, 2009 PUC LEXIS 897 (Ohio P.U.C. March 4, 2009) ("Arbitration Award").  AT&T applied for rehearing, arguing, *inter alia*, that PUCO could not compel AT&T to provide interconnection to Intrado, because Intrado's service does not meet the definition of a "telephone exchange service" under the Act.  On June 17, 2009, PUCO issued its entry on the application for rehearing, denying AT&T's challenges in material part.  *See In re Intrado Communications, Inc.*, No. 07-1280-TP-ARB, 2009 PUC LEXIS 420 (Ohio P.U.C. June 17, 2009) ("Arbitration Rehearing").  On October 15, 2009, AT&T brought suit in this Court to challenge PUCO's arbitration determinations pursuant to the Act's provision for federal judicial review of state commission determinations in connection with arbitrations or negotiations of interconnections agreements.  *See* 47 U.S.C. § 252(e)(6).[6]

This Court initially reserved ruling on the merits of AT&T's claims in this action because similar, if not identical, issues to those raised by AT&T here were until very recently before the Federal Communications Commission ("FCC") for determination in a pending arbitration proceeding involving Defendant Intrado.  *See In re Petition of Intrado Communications of Virginia, Inc., et al*, FCC Rcd. 17867 (2008).  Given the FCC's primary jurisdiction and "special

_____

[6] Section 252(e)(6) provides:

> In any case in which a State commission makes a determination under this section [252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement … meets the requirements of section 251 of this title and this section [252].

competence" in applying and interpreting the Act, this Court decided that it was prudent to await the ruling in that case which may have decided this one. *See United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 665 (6th Cir. 2000) (discussing the doctrine of primary jurisdiction in a case involving the FCC). The parties in that action recently resolved their arbitration disputes, however, thereby making it unnecessary for the FCC to decide the issues regarding of interconnection of Intrado's emergency 9-1-1 service. *See In re Petition of Intrado Communications of Virginia, Inc.* WC Docket No. 08-33 (July 18, 2011), at 2 ("The Bureau makes no determination regarding whether Intrado is or was entitled to interconnection under section 251 (c) of the Act for the service at issue in the arbitration.")

The issues have been fully briefed by the Parties, and the matter is now ripe for this Court's determination.

## III. STANDARD OF REVIEW

The district court "reviews the decisions of the Commissioners of PUCO *de novo* as to whether or not the arbitrated interconnection agreements are in compliance with the Act, while all other issues, particularly factual determinations, are reviewed under an arbitrary and capricious standard." *MCI Telecomms. Corp. v. Ohio Bell Tel. Co.*, 279 F. Supp. 2d 947, 953 (S.D. Ohio 2003).

In reviewing the state commission's findings of fact made in the course of exercising its enforcement authority, "[p]ursuant to arbitrary-and-capricious review, we must canvass the record to determine whether there exists a 'rational connection between the facts found and the choice made.'" *Alliance for Cmty. Media v. FCC*, 529 F.3d 763, 786 (6th Cir. 2008) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). This standard "is the least demanding form of judicial review of administrative action. When it is

possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998).  Defendant PUCO's factual decisions "should be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Id.*

## IV. LAW AND ANALYSIS

### A.  Preclusion of AT&T's Claims

Count One of AT&T's complaint alleges that PUCO violated the Act by finding in the Arbitration Award and Arbitration Rehearing that Intrado's IEN service qualifies as "telephone exchange service" for purposes of compelling an interconnection agreement under Section 251(c)(2).  Complaint, ¶ 2.  Success on this first claim would make it unnecessary for the Court to decide AT&T's remaining challenges to PUCO's determinations in the arbitration proceedings, because to be eligible to compel arbitration of an interconnection agreement under Section 251(c)(2), Intrado must provide either "telephone exchange service" or "exchange access" as defined by federal law.  Section 251(c) provides that among the obligations of ILECs is the duty to provide for interconnection for a requesting telecommunications carrier (such as Intrado) "for the transmission and routing of telephone exchange service and exchange access." 47 U.S.C. § 251(c)(2)(A).

Defendants PUCO and Intrado argue compellingly that the issues regarding Intrado's status as a "telecommunications carrier" including its provision of "telephone exchange service" were already decided in the prior certification case and, thus, AT&T should be precluded from raising them again in this appeal from the arbitration proceedings.  AT&T's argument that Intrado's service does not meet the definition of "telephone exchange service," Defendants

assert, is an improper attempt to have this Court revisit the final decision of PUCO on that issue in the Certification Rehearing, which AT&T declined to appeal to the Supreme Court of Ohio. Defendants argue that *res judicata* and the equitable doctrines of waiver and estoppel foreclose AT&T's claim.  Before reviewing the merits of AT&T's claims, therefore, the Court examines first whether any of these doctrines apply in this case.

### 1.  Issue preclusion

Defendants argue that *res judicata* forecloses AT&T's claim that Intrado's service does not qualify as "telephone exchange service" under federal law because PUCO decided that issue in the earlier certification case, and that decision constituted a separate and final decision on the merits.  The equitable doctrine of *res judicata* encompasses two similar, but operationally distinct, bars to re-litigating similar issues: claim preclusion, sometimes called "true" *res judicata*, and issue preclusion, or "collateral estoppel."  *See Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 77, n.1 (1984) (internal citations omitted); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, fn. 4 (6th Cir. 2002).  The parties here contest issue preclusion's bar to AT&T's re-raising the issue of "telephone exchange service" more vigorously than that of claim preclusion, and therefore the Court treats the applicability issue preclusion first.

Issue preclusion provides that "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies." *Trafalgar Corp. v. Miami County Bd. Of Comm'rs.*, 519 F.3d 285, 287 (6th Cir. 2008) (citation omitted).  The Sixth Circuit has held that issue preclusion requires the party seeking the preclusion to establish the following elements:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been

necessary to the outcome of the prior proceeding; (3) the prior proceeding must
have resulted in a final judgment on the merits; and (4) the party against whom
estoppel is sought must have had a full and fair opportunity to litigate the issue in
the prior proceeding.

*Kosinski v. C.I.R.*, 541 F.3d 671, 675 (6th Cir. 2008) (internal citation omitted); *see also Spilman
v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981) (holding that the party asserting the estoppel has the
burden of proving that the requirements have been met).

　　AT&T argues as a preliminary matter that *res judicata* and issue preclusion apply only to
administrative proceedings that are adjudicatory, or "quasi-judicial," in nature, and since the
certification case did not employ the trappings of an adjudicatory proceeding (expert testimony,
presenting evidence, and cross examination) issue preclusion cannot apply.  AT&T Reply, at 2.
It is true that "where an administrative proceeding involves legislative or rulemaking functions"
as opposed to exercising its judicial function, "*res judicata* does not apply."  *State Corp. Comm.
of Kansas v. Wichita Gas Co.*, 290 U.S. 561, 569 (1934).  PUCO's role in ruling on certification
applications, however, undoubtedly engages the adjudicative function of administrative action as
opposed to the legislative or rulemaking function.  Unlike soliciting comments prior to a
rulemaking or a rate-setting, which are classic legislative actions, *see id.,* the prior certification
case was an adversarial proceeding involving hearings and argument from parties on the disputed
issues of law and fact, in addition to procedural rights to rehearing and appellate review.  *See
United States v. Utah Construction & Mining Co*., 384 U.S. 394, 422 (1966) (applying federal
principles of *res judicata* and collateral estoppel "when an administrative agency is acting in a
judicial capacity and resolves disputed issues of fact properly before it which the parties have
had an adequate opportunity to litigate").  Issue preclusion therefore applies to the
determinations of PUCO in the Certification Order and Certification Rehearing.

To meet the first requirement for issue preclusion, the issue of whether Intrado's service constitutes "telephone exchange service" under the Act must have been "raised and actually litigated" in the prior certification case.  To be "actually litigated," the issue must have been addressed and decided on the merits by the trier of fact, rather than simply conceded or stipulated to.  *See State ex rel. Davis v. Public Emples. Ret. Bd.*, 899 N.E.2d 975, 983 (2008).  This Court finds that here the issue was actually decided.  PUCO expressly held, upon its extensive analysis of Intrado's 9-1-1 service offered for certification as a CLEC, that "Intrado is a telecommunications carrier engaged in the provision of *telephone exchange service* pursuant to Section 251."  Certification Order, at *3 (emphasis added).  On rehearing of that precise issue, among others, PUCO denied the intervening challenges to that determination, reiterating that its determinations regarding "the business plan and operation of Intrado" remained intact.  Certification Rehearing, at *27.

Likewise, the parties (including AT&T) extensively litigated the issue of whether Intrado would be engaged in "telephone exchange service" (or be involved in "exchange access") for purposes of interconnection under Section 251 in the certification case.  Intrado asserted there that "its services constitute telephone exchange service as defined in the 1996 Act inasmuch as it provides the routing, transmission, and transport of traditional and nontraditional emergency call traffic to the appropriate PSAP."  Certification Order, at *2.  On rehearing, the adverse intervening parties disputed this, arguing, *inter alia*, that "the company is not engaged in the routing of telephone exchange service as defined by 47 U.S.C. 153(47) or involved in the provisioning of exchange access." Certification Rehearing, at *23.  Intrado defended its position on this issue again, *id.* at *25, and PUCO sided with Intrado, denying this basis for rehearing.  *Id.* at 31-32.

-10-

AT&T's argument that PUCO only determined the issues relating to Intrado's qualifications as a "basic local exchange service" under state law is simply wrong. As discussed above, PUCO expressly determined (and then clarified on rehearing) that Intrado's service qualified as a novel telecommunications service offering telephone exchange service under both *state and federal law*. *See* Certification Order at *2; Certification Rehearing at *31. This Court finds, therefore, that the issue of whether Intrado's service constituted "telephone exchange service" under federal law was raised and "actually litigated" in the certification proceedings.

With regard to the second requirement for issue preclusion, that the issue "must have been necessary to the outcome of the prior proceeding," the Court finds it, too, is met in this case. AT&T argues that even if the issue of Intrado providing "telephone exchange service" was decided in the certification case, it was not necessary to the outcome of the Certification Order, because certification as a CLEC turns entirely on state law determination of whether Intrado's service qualified as "basic local exchange service" under O.R.C. § 4927.01(A). Thus, the *federal* law issue of whether Intrado offers "telephone exchange service" for the purpose of compelling interconnection under Section 251(c)(2) was not "necessary" to determining whether Intrado qualified as a CLEC. PUCO responds, however, and the Court agrees, that in fact the federal law questions *were* necessary in PUCO's determination to certify Intrado, not as a CLEC, but under the novel category of "competitive emergency services telecommunications carrier" entitled to all the rights of a telecommunications carrier under Section 251. In fact, PUCO made this precise point on rehearing in the certification case:

> While it appears that the intervenors advocate that the Commission's analysis should simply begin and end with the issue of whether Intrado is a CLEC, the intervenors fail to recognize that simply because an applicant is not a CLEC does not signify that it is also not a telephone company subject to the Commission's jurisdiction pursuant to Sections 4905.02, 4905.03(A)(2), and 4905.04, Revised Code. Therefore, upon determining that Intrado is a telephone company that does

> not fit neatly into the existing carrier classifications, the Commission took the next logical and *necessary* step of determining the appropriate classification for the telephone company in order to determine the appropriate regulatory framework to apply to Intrado.

Certification Rehearing at *12 (emphasis added).

PUCO decided the issue of whether Intrado qualified as offering "telephone exchange service" as part of its necessary analysis of how to classify the novel 9-1-1 IEN service offered by Intrado. *See* Certification Order at *3 ("Therefore, while Intrado is a telecommunications carrier engaged in the provision of telephone exchange service pursuant to Section 251 of the 1996 Act, its telephone exchange activities are restricted in scope and, thus, do not extend to the level of a CLEC.").  As PUCO had to classify Intrado to rule on the certification application, the issue was "necessary to the outcome" of the certification case for the purpose of issue preclusion.

The third requirement for issue preclusion is "the prior proceeding must have resulted in a final judgment on the merits."  *Kosinski*, 541 F.3d at 675.  This requirement is not as easily met by the Defendants.  AT&T does not dispute that "*res judicata* can apply as a result of a prior administrative proceeding," *Cincinnati Bell Tel. Co. v. PUCO*, 466 N.E.2d 848, 852 (Ohio 1984), nor does it challenge Defendants' assertion that PUCO's decision in the Certification Order, as affirmed by the Certification Rehearing, constituted a "final decision on the merits." *See Office of Consumers' Counsel v. Public Utils. Com.,* 475 N.E.2d 782, 784 (Ohio 1985) (holding an order by PUCO determining fuel component rates constituted a "valid final judgment" entitled to preclusive effect under the doctrine of *res judicata*).  Whether PUCO backtracked on rehearing from its initial determination of the "telephone exchange service" issue, however, presents a close question.

-12-

AT&T argues that since PUCO, in its Certification Rehearing, clarified "we are not deciding in this case the issues pending in Intrado's arbitration proceedings," Certification Rehearing at *28, but addressed "ONLY the fundamental question as to Intrado's right, as a telephone company under Rule 4901:1-7-01(S), O.A.C., to request AN interconnection agreement pursuant to Chapter 4901:1-7, O.A.C., and Sections 251 and 252 of [the Act]," *id.*, that it expressly reserved the issue of whether Intrado's service provided "telephone exchange service" for the pending arbitration proceedings.  AT&T Reply, at 6.  This argument, while not without merit, ultimately fails as well.

PUCO did indeed conduct a more thorough treatment of the issue of whether Intrado qualified under the federal law definition of "telephone exchange service" in the arbitration case.  *See* Arbitration Award, at *33 (stating at the outset that "notwithstanding that we decided in prior cases that Intrado provides telephone exchange service, we will conduct an analysis of 47 U.S.C. § 153(47)").  As PUCO made clear at the time, however, its decision to revisit the issue in the arbitration proceeding did not change the fact that it had already decided the issue both in the underlying certification case, and other cases (such as the *Embarq* case, discussed *infra*).  In the Certification Order PUCO determined that "Intrado is a telecommunications carrier engaged in the provision of telephone exchange service pursuant to Section 251 of the Act."  Certification Order at *3.  Then, in the Certification Rehearing, PUCO expressly affirmed its decisions regarding Intrado's status as a telecommunications carrier.  *See* Certification Rehearing, at *31 ("In regard to AT&T Ohio's argument that the Commission incorrectly determined that Intrado is a telecommunications carrier pursuant to federal law, AT&T Ohio's application for rehearing should be denied.").

Part of PUCO's determination of Intrado as a telecommunications carrier involved concluding that Intrado "engaged in the provision of telephone exchange service," and therefore if AT&T had still disputed this finding, it should have appealed the certification case to the Supreme Court of Ohio, as provided O.R.C. §§ 4903.11-13.  Since it did not, PUCO's decision regarding Intrado's provision of "telephone exchange service," while not as in depth as the discussion of the issue in the arbitration case, nevertheless represented a binding final decision by the agency.

The Sixth Circuit has recognized that under Ohio law, "[r]es judicata and collateral estoppel generally apply to quasi-judicial decisions made by administrative agencies from which no appeal has been taken."  *Burkholder v. Bower Tiling Serv.*, No. 93-3115, 1995 U.S. App. LEXIS 218, at *5 (6th Cir. Jan 5, 1995) (unpublished) (citing *Wade v. City of Cleveland*, 456 N.E.2d 829, 831-32 (Ohio 1982)).  Since AT&T chose not to appeal PUCO's decision that Intrado's service constitutes "telephone exchange service" under federal law in the certification case, "that decision would normally be *res judicata*."  *Id.*

The fourth and final requirement for issue preclusion is a due process concern.  The party against whom estoppel is sought, AT&T in this case, must have had a full and fair opportunity to litigate the issue in the prior proceeding.  AT&T makes similar arguments with respect to this last requirement as it made against requirements one and two, with equally unpersuasive force. AT&T claims that it did not have such a full and fair opportunity to contest whether Intrado's service meets the federal definition of "telephone exchange service," "because Intrado's application sought only to be certified under state law as a CLEC."  AT&T Reply at 6.  AT&T goes so far as to claim that "[n]one of the interveners' comments [in the certification case] discussed whether Intrado's service qualifies as 'telephone exchange service' under federal law."

-14-

AT&T Reply at 3.  A review of the discussion in the Certification Rehearing plainly shows, however, that AT&T, OTA, and Cincinnati Bell *all* disputed the appropriateness of PUCO's making federal law determinations of Intrado's service, as well as the merits of that decision, including its qualification as providing "telephone exchange service."  *See* Certification Rehearing at *21-24.

Moreover, as stated above, if AT&T believed that it had not received a full and fair opportunity to litigate the precise issue of whether Intrado provides "telephone exchange service," under the Act, AT&T could have appealed PUCO's decision to the Supreme Court of Ohio.  AT&T neglected to do so, and thus waived the opportunity to litigate the issue further.

### 2.  The prior "*Embarq*" case

Defendant PUCO's decision in the prior arbitration case between Intrado and another ILEC, United Telephone Company of Ohio ("Embarq"),[7] provides further support for finding that the issue of Intrado providing "telephone exchange service" has already been conclusively decided by PUCO, and should be barred by issue preclusion here.  In the *Embarq* arbitration, Embarq opposed Intrado's interconnection on the very same basis as AT&T does here.  *See* Embarq Arbitration Award, 07-1216-TP-ARB, at 9.[8]  There, as here, Intrado contended that it was "seeking to exercise its rights to local interconnection for the purpose of provisioning telephone exchange services, as provided for pursuant to Section 251(c)."  *Id*. at 3.  Embarq, like AT&T does here, contested Intrado's service meeting the appropriate definition for "telephone exchange service," claiming, "that all of the services provided by Intrado are not strictly telephone exchange services."  *Id.* at 47.  PUCO held that it had already conclusively established

---

[7] Ohio P.U.C. Case No. 07-1216-TP-ARB.
[8] As stated in the Arbitration Award:  "Issue 2: Can Embarq deny Intrado its rights under Section 251(c) and 252 of the [Act] and Ohio law by claiming that Intrado: (1) does not offer telephone exchange services or exchange access. . .?"

that Intrado's service provided "telephone exchange service" under the Act, and thus barred

Embarq from rehashing the identical issue again:

> With respect to the arguments raised specific to the issue of whether Intrado is engaged in the provision of telephone exchange services or exchange access service, the Commission agrees with Intrado that this issue was already generically addressed in the context of Intrado's certification proceeding (07-1199) and that, for the most part, Embarq has reiterated its position as previously stated in 07-1199. Therefore, Embarq's arguments with respect to this issue are denied and the Commission determines that Embarq cannot generically deny Intrado its rights under Sections 251(c) and 252 of the 1996 Act and Ohio law by claiming that Intrado does not offer telephone exchange services or exchange access and does not serve retail end users.

*Id.* at 13.

AT&T should be similarly precluded here from denying Intrado its rights by claiming

Intrado does not offer telephone exchange service.  The *Embarq* arbitration decision, above,

came after Intrado's certification case (No. 07-1199).  PUCO's holding in *Embarq*, above,

ameliorated any ambiguity there may have been as to whether it had definitively decided the

issue of Intrado's provision of "telephone exchange service."  The *Embarq* arbitration decision

represents a similarly-situated ILEC attempting to re-litigate the same issue that AT&T raises

here, and was barred from doing so by PUCO.  PUCO's dicta in refusing to decide the issue

there reinforces, if not controls, this Court's finding that the issue is barred by *res judicata*.

For these reasons, and those stated above, the Court finds that AT&T's challenge to

Defendant PUCO's determination that Intrado provides "telephone exchange service" for the

purpose of compelling interconnection pursuant to Section 251(c)(2) (Count One) is barred by

the doctrine of issue preclusion.  A discussion of claim preclusion is therefore unnecessary.

**B.  PUCO's Order for AT&T to Establish Interconnection on Intrado's Network**

AT&T challenges PUCO's order in the Arbitration Award requiring AT&T to establish a POI on Intrado's network pursuant to the general duty of AT&T to allow interconnection under Section 251(a).  As part of its award on Intrado's arbitration petition, PUCO determined that "AT&T would need to establish a POI on Intrado's selective router for the delivery of its end users' 911 calls to PSAP customers of Intrado." Arbitration Award at *81.  Counts Two and Three of AT&T's Complaint allege that PUCO's order was an arbitrary and capricious abuse of authority because: (i) neither Intrado nor AT&T raised Section 251(a) interconnection as an issue for arbitration; (ii) a competing carrier's request for interconnection with an ILEC's network is governed exclusively by Section 251(c)(2); and (iii) Congress did not give state commissions the authority to implement Section 251(a) in an arbitration.  AT&T Initial Brief, at 3.  The Court examines AT&T's assignments of error *seriatim*.

### 1.  Was the issue of Section 251(a) interconnection sufficiently raised below?

AT&T argues first that PUCO's ordering interconnection on Intrado's network under Section 251(a) was contrary to the Act since neither Intrado nor AT&T ever raised Section 251(a) interconnection as an issue for arbitration, and the Act expressly prohibits state commissions from arbitrating issues the parties did not raise.  *See* Complaint, ¶¶ 33, 40; 47 U.S.C. § 252(b)(4)(A).  PUCO does not dispute AT&T's claim that it made this order pursuant to Section 251(a).  *See* PUCO Brief at 11.  PUCO does not agree, however, that it was bound to decide the issue presented of where to locate the POI in this case strictly based on how the parties chose to plead the case.  PUCO argues that by relying on Section 251(a) it was merely exercising its authority under the Act to establish a logical, lawful POI to promote interconnection between AT&T and Intrado.  *Id*. at 17.  Intrado, for its part, argues that the potential application of Section 251(a) in the interconnection was discussed at length by parties

in the arbitration case, and that "AT&T's arguments confuse a party's right to raise issues under Section 252(b)(2) of the Act with PUCO's right to apply all applicable law." Intrado Brief, at 28.

> Section 252(b)(2)(4) of the Act states:
>
> The State commission shall limit its consideration of any petition under paragraph (1) [providing the right for a party to the interconnect agreement negotiations to petition a State commission to arbitrate open issues] (and any response thereto) to the issues set forth in the petition and in the response, if any, filed under paragraph (3) [providing for the non-petitioning party's response to the petition for arbitration].

47 U.S.C. § 252(b)(4)(A).

Accordingly, this Court has previously held that "[t]he Act provides that a party petitioning a state commission must provide relevant documentation concerning unresolved issues," *MCI Telecomms. Corp.*, 279 F. Supp. 2d 947, 949 (S.D. Ohio 2003) *aff'd*, 376 F.3d 539 (6th Cir. 2004), and "[t]hereafter, under § 252(b)(4)(A), the state commission 'shall limit its consideration of any petition . . . to the issues set forth in the petition and in the response.'" *Id.* Given that PUCO acknowledged that "neither party has raised an issue relating to interconnection under 251(a)" in this case, Arbitration Award at *38, AT&T's claim would appear to have merit. Moreover, this Court does not defer to PUCO's prior statements of its authority to apply Section 251(a) without it having been raised, *see id.,* at *37, as this question of the state commission's fidelity to the Act is one the Court reviews *de novo*.

Under the unambiguous language of the Act, PUCO cannot arbitrate the issue if Intrado did not raise it in its petition for arbitration. The question for the Court becomes whether "open issues" are defined broadly or narrowly. In its petition for arbitration, Intrado raised the issue of whether the POI or POIs were to be located solely on AT&T's network or on Intrado's network.

-18-

Specifically, Intrado proposed that "in geographic areas in which Intrado has been selected as the primary provider of 911 services and E911 Services, AT&T's network must interconnect with Intrado's 911/E911 network." *See* Intrado Petition for Arbitration, TRF Docket No. 90-9348-TP-TRF, at 29. Thus, the issue of whether Intrado's arrangement with AT&T would include compelling AT&T to interconnect on Intrado's network was raised, albeit not explicitly pursuant to PUCO's authority under Section 251(a) as opposed to Section 251(c). AT&T argues that this is not sufficient, and insists that the more specific issue of interconnection under Section 251(a) must have been raised.

In *MCI Telecommunications Corporation v. Michigan Bell Telephone*, 79 F. Supp. 2d 768 (E.D. Mich. 1999), a case also involving district court review of a state commission's interconnection arbitration award, the petitioner ILEC (Ameritech) claimed that the state commission lacked jurisdiction to impose certain terms (regarding benchmarks and penalties) on the parties in their interconnection agreement because these issues were not raised in the arbitration petition or response. *See MCI Telcoms. Corp.*, 79 F. Supp. 2d at 774. The court dismissed Ameritech's claim that the issues were not sufficiently raised as "disingenuous," finding that "[w]hile MCI's Petition for Arbitration did not include specific proposed performance benchmarks and penalties," *id.*, that MCI *had* raised the issue of quality of service generally, and, more importantly, Ameritech's response had included its proposed standards for benchmarks and procedures to ensure quality of service. Additionally, the parties' subsequently filed proposed arbitration decisions set forth competing specific benchmarks and penalties, and at the arbitration hearing the parties directed testimony to their respective proposals for these performance standards. *Id.* The court therefore found that the issues of benchmarks and

penalties were sufficiently raised despite not being specifically identified as an issue for arbitration in the competitor's initial petition for arbitration.

In essence, the court in *MCI v. Michigan Bell* found that particular "open issues" within the parties' disputed terms need not necessarily be specifically plead or identified as an issue for arbitration to be competently adjudicated by the state commission. [9]  So long as it is clear from examining the record of the underlying arbitration petition that "the parties had the opportunity to be heard on this issue," *id.*, the commission does not violate Section 252(b)(4)(A) in making a determination on that issue.

Here, as in *MCI v. Michigan Bell*, AT&T's claim that interconnection pursuant to Section 251(a) was not raised by parties is easily dispelled by the fact that both AT&T and Intrado discussed extensively the potential for Section 251(a)'s applicability in their respective briefs submitted to PUCO in the arbitration proceedings.[10]  *See* Arbitration Rehearing at *36 ("AT&T discussed Section 251(a) at length on the record in arguing against Intrado's desire to have AT&T establish a POI on Intrado's network.").  AT&T, therefore, took advantage of more than sufficient opportunities to be heard, both in the initial arbitration hearings and on rehearing of the arbitration award, regarding its position against PUCO's ordering a POI on Intrado's network under Section 251(a) as opposed to having POIs only on the ILEC network as provided by Section 251(c).  *See, e.g.,* Arbitration Award at *47; Arbitration Rehearing at *27-28.

---

[9] 47 U.S.C. § 252(b)(1) states:

> (1)  Arbitration. During the period from the 135th to the 160th day (inclusive) after the date on which an incumbent local exchange carrier receives a request for negotiation under this section, the carrier or any other party to the negotiation may petition a State commission to arbitrate any open issues.

[10] Defendant Intrado cites numerous locations in AT&T's post-hearing brief and transcripts of its witnesses' testimony from the arbitration proceeding discussing Section 251(a) in the specific context of whether the prospective POI could be established on Intrado's network.  *See* AT&T's Initial Post-Hearing Brief at 13-17, 30-34 (Record Index No. 25) (Attachment No. 18 to Intrado Brief); Vol. I. Tr. at 51 (Record Index No. 54) (Attachment No. 19 to Intrado Brief); Vol. II Tr. at 58-59, 88 (Record Index No. 23) (Attachment No. 16 to Intrado Brief).

In relying on Section 251(a) to craft its order on the POI for the parties' interconnection in the Arbitration Award, PUCO was not independently raising and deciding an issue that the parties had not put forth for arbitration, which the Act prohibits. Indeed, the issue of where the POI was to be located was one of the primary open issues of contention. AT&T cannot claim unfair prejudice or surprise by PUCO's reliance on Section 251(a) to establish a POI on Intrado's network, as AT&T contemplated and argued against PUCO doing that very thing both in its briefing, and at the hearings on Intrado's arbitration petition. AT&T's argument represents a misguided and unrealistically narrow interpretation of the "open issue" limitation to PUCO's ability to determine the matters up for arbitration. This Court finds that the issue of whether PUCO should order a POI to be located on Intrado's network pursuant to its authority under Section 251(a) was sufficiently raised and was, therefore, appropriate for adjudication in the Arbitration Award.

### 2. PUCO's authority to order interconnection under Section 251(a)

Second, Plaintiff AT&T argues that regardless of whether the issue was sufficiently raised, PUCO lacked the authority to order the parties to establish a point of interconnection on Intrado's network pursuant to Section 251(a). AT&T contends that a competing carrier's request to interconnect with an ILEC's network is governed exclusively by Section 251(c), and is subject to the provisions therein, which only includes a requirement for the ILEC to accommodate interconnection on the *its own* network. *See* 47 U.S.C § 251(c). AT&T maintains, therefore, that PUCO's express reliance on Section 251(a) for its authority to order the POI on Intrado's network was a violation of the Act. Complaint, ¶ 38.

The defendants do not dispute that PUCO is not authorized to rely on Section 251(c) to order a POI on a network other than AT&T's, and therefore its decision to locate the POI on

Intrado's network for those 9-1-1 calls to PSAPs served by Intrado was necessarily made pursuant to Section 251(a).  PUCO defends its reliance on Section 251(a) to determine the appropriate POI in this case, pointing to Section 251(a)'s provision that every telecommunications carrier has a general duty to interconnect directly or indirectly with the facilities of other telecommunications carriers.  47 U.S.C. § 251(a)(1).  PUCO Brief at 12. Similarly, Intrado asserts that PUCO lawfully exercised its authority to apply all applicable law, including Section 251(a), in its decision of where to locate the POI.  Intrado Brief at 25.

Resolving the parties' dispute on this issue requires the Court to analyze the structure of duties and obligations regarding interconnection which the Act imposes on telecommunications carriers.  Section 252(b) outlines the scope of interconnection agreements reached through compulsory arbitration in front of the state commission, such as the agreement in this case, as distinguished from interconnection agreement terms arrived at by parties through voluntary negotiation which the Act affords wider discretion.  *See* 47 U.S.C. § 252(a)(1).[11]  Under Section 252, in resolving open issues "and imposing conditions upon the parties to the agreement," the state commission shall, *inter alia*, "ensure that such resolution and conditions meet the requirements of section 251." 47 U.S.C. § 252(c)(1).

Section 251 "provides a graduated set of interconnection requirements and other obligations designed to foster competition in telecommunications markets, particularly local markets."  *In the Matter of Petition of CRC Communications*, Case No. FCC 11-83 (2011), at 2 (adding that "[t]he nature and scope of these obligations vary depending on the type of service provider involved.").  The FCC has further explained the structure of Section 251 as follows:

---

[11] Section 252(a)(2) states that, when engaging in voluntary negotiations, "an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in 47 USCS § 251(b), (c)."

> Sections 251(a) through 251(c) create a three-tiered hierarchy of escalating obligations based on the type of carrier involved. Section 251(a) imposes relatively limited duties on all telecommunications carriers; section 251(b) imposes more extensive duties on telecommunications carriers that are LECs; and section 251(c) imposes the most extensive duties on LECs that are incumbent LECs.

*Guam Pub. Util. Comm'n*, 12 FCC Rcd. 6925, ¶ 19 (1997). [12]

First, Section 251(a) provides the general duties of telecommunications carriers (regardless of distinction) to provide interconnection:

> (a) General duty of telecommunications carriers. Each telecommunications carrier has the duty--
>    (1) to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers; and
>    (2) not to install network features, functions, or capabilities that do not comply with the guidelines and standards established pursuant to section 255 or 256 [47 USCS § 255 or 256].

Other district courts in this circuit have described Section 251(a) as "a general duty with many statutory limitations, depending on the type of carrier." *T-Mobile USA, Inc. v. Armstrong*, No. No. 3: 08-36-DCR, 2009 U.S. Dist. LEXIS 44525, at *9 (E.D. Ky. May 20, 2009) ("In addition, the relevant regulatory language does not contradict the statutory language -- it clarifies that the method of interconnection should skew in favor of the requesting carrier unless extenuating circumstances exist. 47 C.F.R. § 20.11.").

Section 251(b) provides further obligations for "local exchange carriers," including the duty: (1) not to prohibit or impose unreasonable conditions on the resale of telecommunications services; (2) to provide, to the extent feasible, number portability; (3) to provide dialing parity to

---

[12] The FCC's implementing regulations and published declaratory rulings on the Act's statutory scheme are instructive in our inquiry. *See, e.g., Mich. Bell Tel. Co. v. MCI Metro Access Transmission Servs.*, 323 F.3d 348, 352 (6th Cir. 2003) (stating "state commissions are directed by provisions of the Telecommunications Act of 1996, 47 U.S.C.S. § 251 et seq., and Federal Communication Commission (FCC) regulations in making decisions, which are subject to federal court review. At the same time, the Act gives the state commissions latitude to exercise their expertise in telecommunications and needs of the local market."); *Michigan Bell Tel. Co. v. Strand*, 305 F.3d 580, 586 (6th Cir. 2002) ("[W]e consider the FCC's interpretation of the Act persuasive authority because Congress authorized the FCC to issue rules 'to implement the requirements' of § 251.").

competing providers; (4) to afford access to poles, ducts, conduits, and rights-of-way of competing carriers; and (5) to establish reciprocal compensation arrangements for the transport and termination of telecommunications.  Section 251(b)'s duties are not at issue here, but nevertheless help provide context for interpreting the statutory scheme, *infra*.

Finally, Section 251(c) provides additional obligations for ILECs, specifically, in addition to those in Section 251(a) and 251(b).  With respect to interconnection, Section 251(c)(2) states that, "[i]n addition to the duties contained in subsection (b), each incumbent local exchange carrier has the following duties:

> (2) Interconnection. The duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier's network--
> (A) for the transmission and routing of telephone exchange service and exchange access;
> (B) at any technically feasible point within the carrier's network;
> (C) that is at least equal in quality to that provided by the local exchange carrier to itself or to any subsidiary, affiliate, or any other party to which the carrier provides interconnection; and
> (D) on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions of the agreement and the requirements of this section and section 252 [47 USCS § 252]."

47 U.S.C. § 251(c)(2); s*ee also, e.g., Verizon N. Inc. v. Strand*, 367 F.3d 577, 581 (6th Cir. 2004) ("The Act also prescribes a more specific mandate for incumbents by requiring them to share their networks with competitors through three mechanisms: 1) permit competitors to purchase local services at wholesale rates for resale to end users; 2) permit competitors to lease unbundled elements of the incumbent's network; and 3) permit competitors to interconnect their facilities to the incumbent's network.") (citations omitted)).

The question for this Court, then, is whether PUCO, when making its determinations pursuant to a request for arbitration brought specifically under 251(c), which parties do not

dispute was the case here, is limited by Section 251(c)(2)'s requirement that ILECs provide for interconnection on their own network, or whether it may order the POI to be established on either carrier's network under the more general duty of telecommunications carriers to provide interconnection under Section 251(a). As is not unusual in this area, no clear answer to this question presents itself, either from the language and structure of the Act or from commission and court decisions.[13] Based on the following analysis, however, the Court finds that the better interpretation of the Act, particularly in light of recent FCC rulings, is that Section 251(c)'s applicability in this case does not prevent PUCO from deciding issues under Section 251(a), including the issue of where the appropriate place is to establish the POIs for Intrado's new service in its interconnection with AT&T.

AT&T vigorously maintains that when a requesting carrier seeks interconnection with an ILEC for the purpose of providing telephone exchange service in the ILEC's territory, the *only* provision that applies is Section 251(c), in particular subsection 2. A plain reading of Section 251(c) itself negates AT&T's claim, however, as the opening prefatory clause of Section 251(c) states that the obligations it provides for ILECs are "in addition to the duties contained in subsection (b)." At the very least, therefore, Section 251(b)'s requirements still apply to ILECs when a requesting carrier is seeking interconnection under Section 251(c). Thus, AT&T is incorrect to claim that Section 251(c)(2) is the only applicable provision of the Act in adjudicating and reviewing an interconnection request, given Section 251(c)'s direction that at least one other section also applies.

---

[13] *See AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 397 (1999) ("It would be gross understatement to say that the 1996 Act is not a model of clarity. It is in many important respects a model of ambiguity or indeed even self-contradiction.").

The Act's language is ambiguous, however, as to whether ILECs can be compelled to interconnect under Section 251*(a)*, in addition to their express interconnection obligations under Section 251(c)(2) and (b).  Section 251(c)'s failure also to mention the general obligations in Section 251(a) could reflect an intentional decision by Congress to exclude Section 251(a) from applying to ILECs when Sections 251(c) applies.   The FCC's ruling in *In the Matter of Petition of CRC Communications*, Case No. FCC 11-83, 26 FCC Rcd. 8259 (2011), cleared up the question by holding the following:

> [W]e conclude that requests made to incumbent LECs [ILECs] for interconnection and services pursuant to sections 251(a) and (b) are subject to state commission arbitration as set forth in Section 252.

26 FCC Rcd. 8259, at 11.

Hence, AT&T's broad claim that PUCO has no authority whatsoever to arbitrate issues of interconnection under Section 251(a) is defeated by the ruling in *CRC Communications*.  *See* AT&T Brief at 30.  As the FCC also states at the outset of its opinion,  "[w]e also clarify that rural incumbent LEC's obligations under sections 251(a) and (b) can be implemented through the state commission arbitration and mediation provisions in Section 252 of the Act."  26 FCC Rcd. at 1.

Indeed, the FCC's express purpose for its Declaratory Ruling in *CRC Communications*, which was issued in the interim since the parties filed their briefs in this matter, was to "to clarify statutory rights under section 251 of [the Act] in light of apparently conflicting determinations in several states."  *Id.*  The FCC acknowledged that "the Act is ambiguous as to whether the section 252 arbitration process can be invoked to implement and enforce the obligations in sections 251(a) and (b)," *id.* at 10, which is precisely the predominant issue here.

In *CRC Communications* the FCC confirmed that whether or not a given ILEC is specifically obligated to allow interconnection on their own networks under Section 251(c) (as AT&T is here), another carrier can also compel the ILEC to interconnect under the more general duty of all telecommunications carriers to provide interconnection under Section 251(a).  For example, the FCC states that "the obligation to fulfill the requirements set forth in sections 251(a) and (b) does not arise from, or depend upon, the section 251(c)(1) duty to negotiate in good faith."  *Id.*  AT&T espouses the opposite reading by arguing that Section 251(c)(2) is the only applicable section in Intrado's arbitration petition.  AT&T Brief at 26.  AT&T's, however, is a constricting and unfaithful view of the Act, and that interpretation has been discredited by the FCC:

> For example, under such a reading of section 251, competitive LECs could not be compelled to interconnect with other competitive LECs *under section 251(a)*, nor provide such competitors with any services set forth in section 251(b).  We find that this reading of the Act does not comport with the plain language and design of section 251.

*CRC Comm's*, 26 FCC Rcd. 8259 at 10 (emphasis added).

 If a competitor LEC can compel interconnection to another competitor LEC under Section 251(a), as the FCC's Declaratory Ruling in *CRC Communications* states, it follows that an ILEC can be compelled to interconnect with a competitor LEC under Section 251(a) as well.  ILECs, after all, have *greater* obligations to interconnect than competitor LECs, not the other way around, as is well-established under the requirements of Section 251.  AT&T is, accordingly, mistaken in arguing that Section 251(a) does not provide a basis for compelling interconnection on a competitor ILEC's network, such as Intrado's.

The particular context of the FCC's discussion of permissible areas for arbitration under Section 251 in *CRC Communications* was that of "rural" incumbent LECs and the so-called

"rural exemption" in Section 251(f)(1).[14]  *See id.* at 6 (opening the Discussion section stating, "[w]e believe it is important to remove the uncertainty surrounding the proper interpretation of sections 251 and 252 in situations where the rural exemption applies").  The FCC's interpreting the rural exemption explains why the ruling did not expressly hold that state commissions were free to arbitrate Section 251(a) issues as part of arbitrating Section 251(c)(2) requests, because the very nature of the rural exemption is that Section 251(c)'s enhanced obligations to ILECs do not apply to those that qualify under it.  *See CRC Comm's.*, 26 FCC Rcd. at 9 ("We also clarify that a rural carrier's exemption under section 251(f)(1) offers an exemption only from the requirements of section 251(c) and does not impact its obligations under sections 251(a) or (b).").  Nevertheless, the Court finds that the same holding would apply to standard ILECs who do not qualify for the rural exemption, as, once again, non-exempt ILECs are under the strictest obligations of any telecommunications carrier to provide interconnection.

AT&T argues, not entirely without merit, that Defendants provide "no" legal support for their position that PUCO was authorized to arbitrate and decide an interconnection issue under Section 251(a) when the request for interconnection was initially made by Intrado under 251(c)(2).  The FCC in *CRC Communications*, with its special competence in interpreting and implementing the Act,[15] has since weighed in on the side of Defendants, concluding that "[w]e therefore reject the arguments of some commenters that oppose state arbitration of Section 251(a) and (b) requirements without recognizing any alternative forum for enforcement of those

---

[14] See 47 U.S.C. § 251(f)(1) ("Subsection (c) of this section shall not apply to a rural telephone company until (i) such company has received a bona fide request for interconnection, services, or network elements, and (ii) the State commission determines . . . that such request is not unduly economically burdensome, is technically feasible, and is consistent with section 254 . . . .").

[15] *See Western Union Tel. Co. v. Federal Communications Com.*, 541 F.2d 346, 350 (3d Cir. 1976) (confirming that "the FCC does exercise special competence with respect to the many decisions entrusted to it under the Federal Communications Act"); *see also Alliance for Cmty. Media*, 529 F.3d at 776 (applying *Chevron* deference to the FCC's interpretations of the Act, stating, "pursuant to the principle of deference to administrative interpretations, considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").

requirements." *Id.* at 13.  AT&T's proposition of law that states Intrado cannot compel interconnection on its own network from AT&T, because of Section 251(c)'s exclusive applicability, is consequently erroneous.   PUCO was justified in deciding the issue of where to locate the POIs in the agreement, including whether to establish a POI on Intrado's network under Section 251(a).

### 3. PUCO's authority to implement Section 251(a) in an arbitration award

AT&T insists PUCO's decision to use Section 251(a) to locate a POI on Intrado's network rather than strictly on AT&T's network was contrary to Congressional intent, which AT&T contends limits PUCO's authority to what is expressly granted in the Act.  This Court disagrees.

Section 252(b), which guides PUCO's hand when making its determinations on petitions for arbitration, instructs that "[t]he State commission shall resolve each issue set forth in the petition . . . by imposing  appropriate conditions as required to implement [the requirements of § 251]."  47 U.S.C. § 252(b)(4)(C).  As the FCC states in *CRC Communications*:

> Much of the language of section 252 speaks broadly of the states' role in implementing section 251. We find ample support to conclude that Congress did not intend to restrict the arbitration authority of state commissions to matters arising under section 251(c). For example, several of section 252's jurisdictional and procedural provisions, on their face, refer generally to *all* interconnection disputes arising under section 251; these provisions do not restrict the arbitration authority of state commissions to matters arising under section 251(c).

26 FCC Rcd. at 11.

The FCC bolsters its interpretation by noting that "where Congress intended to refer only to a specific subsection of section 251, it did so expressly," *id.* at 12 (referring, *e.g.*, to Sections 252(d)(1), (d)(3), (g), and (j)).  Thus, Section 252(b)'s reference to Section 251 as a whole

evidences Congress's intent to include issues under Section 251(a) among those the state commission is tasked to arbitrate.

In sum, AT&T's argument that PUCO has no authority to determine issues outside Section 251(c)(2) in this context of a competing carrier seeking interconnection with an ILEC under Section 251(c)(2) is contrary to the Act, as most recently clarified by the FCC.  AT&T's position is also contrary to Congress's intent behind the Act to bestow state commissions with broad authority to mediate and arbitrate disputes between telecommunications carriers, and to promote the goal of bringing increased competition in the local telephone exchange market.  *See MCI Telcoms. Corp.*, 79 F. Supp. 2d at 780; *see also Quick Communs., Inc. v. Mich. Bell Tel. Co.*, 515 F.3d 581, 585 (6th Cir. 2007)  (stating that Congress's "over-arching purpose" behind the Act was "to end local telephone company monopolies and promote competition in local telephone markets").

### 4.  Review of PUCO's decision for arbitrariness

Upon finding that PUCO had proper authority to decide the duly raised issue of where to locate the POIs between AT&T and Intrado's respective networks, the factual decision PUCO made to locate a POI on Intrado's selective router when Intrado is the 911 service provider to the PSAP will be upheld unless shown to be arbitrary and capricious.  *See MCI Telecomms. Corp.*, 279 F. Supp. 2d at 953.  For the reasons below, the Court finds PUCO's decision was based on the rational and responsible review of parties' proposals on the matter; thus, the decision was not arbitrary or capricious.

In its Arbitration Award, PUCO provided lengthy and reasonable explanations for ordering a POI to be established on Intrado's network, as it has ordered in previous arbitrations. *See* Arbitration Award at *81.  PUCO weighed evidence provided by Intrado that establishing

POIs on Intrado's network for routing the 9-1-1 call traffic destined for its PSAP customers would be the most efficient arrangement for efficiently delivering 9-1-1 calls and thus would better serve individuals requiring emergency assistance.  *Id.* at *78-80.[16]  AT&T complains that this setup unfairly shifts costs to the ILEC; however, the Court finds no evidence of AT&T being made to unfairly bear inequitable costs.  The system PUCO ordered entails a mutual sharing of costs, where "each party is responsible for getting its end users' 911 calls to the selective router of the 911 service provider to which a 911 call is destined."  *Id.*

PUCO furthermore duly considered AT&T's objections to the scheme, and even altered its initial ruling in light of AT&T's concerns.  *See* Arbitration Rehearing at *37 (granting AT&T's application for rehearing "in order to clarify that, as in the previous Intrado arbitration awards, any POI AT&T would have to establish at an Intrado selective router would have to be within AT&T's service area").   Far from being arbitrary or capricious, PUCO's order that parties establish reciprocal POIs on both AT&T's network and on Intrado's network was demonstrative of a reasonable decision made in light of the evidence and facts presented to it.  *See Killian*, 152 F.3d at 520.  Counts Two, Three, and Four of AT&T's Complaint are therefore dismissed.[17]

### C.  AT&T's Remaining Challenges to PUCO's Arbitration

#### 1.    PSAP-to-PSAP Transfers

Count Five of AT&T's Complaint alleges that PUCO's Arbitration Award on Issues 5(a) and 5(b) requiring AT&T to enter into transfer arrangements with certain non-carrier, third party

---

[16] "Intrado explains that its proposal to require two geographically diverse POIs on Intrado's network when Intrado is the 911 service provider makes sense as the critical nature of 911 communications demands diversity and redundancy (Intrado Ex. 1 at 27). Intrado further asserts that geographically diverse routes for 911 traffic are consistent with industry guidelines and recommendations (Id. at 28)."  Arbitration Award at *79.

[17] Count Four of AT&T's Complaint originally challenged PUCO's ruling regarding charges for certain "ports" on Intrado's Selective Router as part of its order establishing a POI on Intrado's network.  Complaint, ¶ 45-46.  AT&T also attacked AT&T's alleged failure to require the POI on Intrado's network to be within the Local Transport Area in which Intrado provides service.  Complaint, ¶ 47.  As AT&T chose not to argue in support for these claims, the Court has no basis for finding these factual decisions arbitrary or capricious, and therefore upholds PUCO's rulings with respect to these issues.

PSAPs to establish the ability to transfer 911 calls from its PSAP customers to Intrado's PSAP customers was unlawful, arbitrary and capricious because it compelled action with entities not party to the interconnection agreement.  *See* Arbitration Award at *89-92.  PUCO argues in defense that the general duty under Section 251(a) for telecommunications carriers, including AT&T, to interconnect with other carriers authorized PUCO to order that a framework be created as part of the interconnection agreement to ensure that "inter-selective router capabilities can be provisioned *once* requested" by the customer PSAPs.  PUCO Brief at 30.

AT&T lists three legal infirmities with PUCO's conclusion that Section 251(a) applied and allowed it to include terms and conditions regarding third-party PSAP interconnections.  First, since Intrado did not specifically ask for PUCO to arbitrate any issues under Section 251(a), the issue was not "open" for PUCO to resolve on that basis.  Second, as before, AT&T argues that interconnection between competing carriers and ILECs is exclusively governed by Section 251(c)(2), and Section 251(a) issues are not arbitrable under Sections 252(b) in any case.  Finally, AT&T points to PUCO's prior statement in the *Embarq* arbitration proceeding that PSAP-to-PSAP transfers "do not involve interconnection of a competing carrier's network with an ILEC's network," to be saying that these transfers are not interconnections and therefore cannot be ordered under Section 251(a)'s duty to interconnect.  *See* AT&T Brief at *33.

As with AT&T's prior contention that PUCO wrongfully adjudicated an issue that was not "open" for arbitration, here, too, AT&T's claim on that basis is misguided.  The issues regarding the architecture of the network created through AT&T and Intrado's interconnection agreement, including "inter-selective router trunking" to allow for transfers of calls between PSAPs on different Selective Routers (interoperability), was raised in Intrado's petition for arbitration. *See, e.g.,* Intrado Petition for Arbitration, TRF Docket No. 90-9348-TP-TRF, at 31-

32.  The fact that Intrado never asked PUCO to impose this duty on AT&T under Section 251(a), specifically, as AT&T complains, does not mean the issue was not "open" for arbitration pursuant to Section 252(b).

AT&T in the alternative denies PUCO's authority to arbitrate *any* issues under Section 251(a) whatsoever, including this decision regarding PSAP transfer agreements.  This broad attack fails here, s*ee* Section B, *supra*.  PUCO may adjudicate any open issues the parties have left to resolve in their agreement, including those arising under Section 251(a).  Under Section 252(b)(1), the state commission is charged with arbitrating "any open issues" that the two carriers are unable to agree.  47 U.S.C. § 252(b).  The FCC has unequivocally clarified that this includes issues arising under Section 251(a):

> We find it consistent with the structure and purpose of the Act for the state commissions, which are tasked with, at a minimum, arbitrating or reviewing any agreements relating to section 251(b) obligations, to also review issues relating to section 251(a) interconnection where issues relating to both sets of obligations are implicated in the same request for interconnection.

*See CRC Comm's*, 26 FCC Rcd. at 12.

Having established that nothing in the Act prevents PUCO from adjudicating outstanding issues within the Parties' interconnection agreement arising under Section 251(a), Defendant PUCO's factual determination that a framework should be established to route calls properly to various PSAPs warrants the utmost deference from this Court.  AT&T provides nothing of substance to suggest that PUCO's decision represents anything but a reasonable structuring of the interconnection terms supported by sufficient evidence in the record.  As PUCO explains in its brief, the requirement does not preclude the necessary input from the third-party PSAPs for the contemplated arrangements.  PUCO merely ordered AT&T and Intrado to provide the

necessary framework on their networks to facilitate PSAP-to-PSAP call transfer capabilities in preparation for the agreements. PUCO Brief at 30.

This Court finds PUCO's order that parties establish a framework for facilitating third-party transfer arrangements with prospective customer PSAPs was not in any way arbitrary or capricious, and is a valid requirement. Count Five of AT&T's Complaint is dismissed.

### 2. Rates to be charged to Intrado for AT&T's non-covered services

AT&T's final challenge, in Count Six of the Complaint, disputes the rate charging scheme established by PUCO which orders Intrado to pay AT&T "the lowest rate in effect at the time for Ohio CLECs" for services provided by AT&T not contained in the interconnection agreement. Complaint, ¶ 52. AT&T contends that setting a mandatory charge violates the FCC's "all-or-nothing" rule prohibiting competing carriers like Intrado from adopting an isolated rate from another carrier's interconnection agreement with that ILEC. Like any other carrier, argues AT&T, Intrado should be forced to negotiate the rates of AT&T's products or services provided which are not covered by the agreement.

Defendant PUCO's determinations on issues such as rates to be charged between parties to an interconnection agreement are protected against second guessing by this Court from all but the most arbitrary exercises of its competent authority. The Sixth Circuit has reinforced the statements from commentators that "'intricate matters, such as rate-setting and determining the feasibility of regulatory mandates, lie beyond the core of judicial competence.'" *Mich. Bell Tel. Co.*, 323 F.3d at 352 (quoting Philip J. Weiser, *Federal Common Law, Cooperative Federalism, and the Enforcement of the Telecom Act*, 76 N.Y.U. L. Rev. 1692, 1724 (2001)); *see also Mich. Bell. Tel. Co. v. Level 3 Communications, Inc.* 218 F. Supp. 2d 891, 894 (E.D. Mich. 2002) (stating "this court should not sit as a surrogate public utilities commission to second-guess the

-34-

decisions made by the state agency to which Congress has committed primary responsibility for implementing the Act." (citation omitted)). PUCO's order on rate-setting for services not covered in the agreement will therefore be afforded considerable deference by this Court.

"Interconnection" and "network elements" services provided to the competing carrier by the ILEC pursuant to an interconnection agreement "must be provided 'on rates, terms and conditions that are just, reasonable, and nondiscriminatory.'" *Bellsouth Telecomms., Inc. v. Southeast Tel., Inc.*, 462 F.3d 650, 652 (6th Cir. 2006) (quoting 47 U.S.C. § 251(c)(2)(D); 47 C.F.R. § 51.5). Additionally, the FCC's "all-or-nothing" rule requires that if requesting carrier "wants to adopt a term or service of an existing agreement, it must opt in to the entire agreement." *Id.* at 654 (quoting *Review of the Section 251 Unbundling Obligations of Local Exch. Carriers*, 19 FCC Rcd. 13494, 13496 P 1 (2004)). The Sixth Circuit in *Bellsouth* stated the rule as follows:

> Under the all-or-nothing rule, ILECs are required to "make available without unreasonable delay to any requesting [CLEC] any agreement *in its entirety* to which the [ILEC] is a party that is approved by a state commission . . . upon the same rates, terms, and conditions as those provided in the agreement." 47 C.F.R. § 51.809(a) (emphasis added).

*Bellsouth Telecomm's.,* 462 F.3d at 654 (discussing the regulatory history of the "all-or-nothing" rule at length).

In the arbitration proceeding below, on Issue 29(b) of the Arbitration Award, PUCO determined that "in a situation where Intrado orders a product or service for which terms and conditions are not contained in the interconnection agreement," Arbitration Award at *140, the following rate scheme applies:

> The Commission…will allow AT&T to charge Intrado what it charges CLECs for the same product or service. However, if AT&T has provisioned Intrado's order, even though it agreed to reject such orders, the Commission finds that Intrado

> should only be required to pay the lowest price in effect at that time for Ohio
> CLECs and not necessarily the generic rate.

*Id*.

AT&T alleges that the all-or-nothing rule makes it unlawful for PUCO to allow Intrado automatically to obtain the "lowest rates" as established by other competing carrier's agreements with AT&T for certain services not specifically listed or priced in the interconnection agreement, without taking on that entire agreement. AT&T Brief at 34. Defendants PUCO and Intrado deny the applicability of the all-or-nothing rule to PUCO's decision on this issue. PUCO contends that since it merely addressed rates for services outside the agreement, which AT&T has no continuing obligation to provide, there was no resulting prejudice to AT&T from its adjudication. PUCO Brief at 29-30. Intrado argues that the rule is only concerned with products or services "provided under an agreement," and PUCO's decision expressly covers only instances where the product or service in question is not provided for under the terms and conditions of the interconnection agreement and where AT&T has established no separate tariff for the service elsewhere. Intrado Brief at 32.

The Court does not accept the logic behind Intrado's argument to the extent Intrado is suggesting that PUCO's order does not permit Intrado to take advantage of another agreement's terms. The order allows that by requiring AT&T to charge Intrado the rates for services supplied by other CLEC agreements where there are no terms for those services within their agreement. PUCO's argument is more apposite, however, in emphasizing that these rates are only for services that AT&T provides Intrado "even though it agreed to reject such orders." Arbitration Award at *140. AT&T even acknowledges in its Reply that this provision requiring the lowest price charged to any other carrier only applies to orders for services made "mistakenly" by Intrado and provided "inadvertently" by AT&T. AT&T Reply at 18. Intrado can hardly be said

to be "seeking to avail itself of terms in [another] interconnection agreement" where it did not

intend on AT&T providing the service or produce.  *See Review of the Section 251 Unbundling*

*Obligations of Local Exchange Carriers*, 19 FCC Rcd. 13494 at P 1.  Moreover, AT&T is free in

these circumstances "to reject future orders for the product or service until such time as terms and

conditions are incorporated into the interconnection agreement," Arbitration Award at *141, and

thus will not be in any way prejudiced by this pricing requirement, as it alleges.

   The Court has no "'reason to suspect that the [PUCO's] interpretation does not reflect the

agency's fair and considered judgment on the matter in question.'"  *See Talk America, Inc. v.*

*Michigan Bell Telephone Co.* 131 S.Ct. 2254, 2263 (2011) (citation omitted).  PUCO's decision

to allocate rates for services AT&T chooses to provide to Intrado outside the scope of the

agreement at the lowest level of those charged to other CLECs was accordingly not arbitrary and

capricious.  AT&T's claims are denied, and Count Six is dismissed.

## V. CONCLUSION

   For the reasons stated above, this Court affirms the arbitration award of the Public

Utilities Commission of Ohio in all disputed respects.  Plaintiffs' Counts One through Six are

**DISMISSED**.  This case is accordingly **DISMISSED** in its entirety.



   **IT IS SO ORDERED.**



           <u>s/Algenon L. Marbley</u>
           **Algenon L. Marbley**

**DATED: January 6, 2012**